Call the next case please. December 3, 14, 0835 and Saturday, December 3, 14, 0836. Karen Pera, et al. and Marissa Dominick, appellants by Frank Black v. June Watson and the trustee of the Roy Walter and Dorothy Walter Trust Appellate by John Clown, Jr. Mr. Black. Good afternoon. I represent Marissa Dominick, who was the beneficiary of the estate of the deceased son, Wayne Walter. The Cantman Law Firm represents all of the other appellants, but we've agreed that I will be making the presentation for all appellants. Let's go back to April 1993, when this five-page agreement was signed by the three adult children of Roy and Dorothy Walter. Now the father, Roy, had died 18 years earlier, back in 1975. And he had owned Parcel One, which was in a resident trust. And the terms said, Dorothy gets all the income for her life, she's the mom. Upon the death of Dorothy, Parcel One would descend to the children, her stirpees, who were living at the time of Dorothy's death. The agreement was signed only by the three adult children, Wayne, Mark, and June. The mother, Dorothy, did not sign the agreement. Mark died in 2007, and he left three children for the other appellants. My client, Wayne Walter, died in 2008, a single person, no descendants. And June was the only child who survived Dorothy. The mom, Dorothy, died in 2013. The only surviving child was June. And that issue is, what is the effect of this agreement? Everybody filed motions for summary judgment in the circuit court, and it was granted in favor of June Watson and against all the appellants. Our position is that this agreement is valid, and that the real estate that was distributed in this agreement should be governed by the agreement and be distributed accordingly. Now, our opponent will argue the agreement was subject to a condition precedent that was not satisfied and that there was no consideration. Now, for there to be a condition precedent to performance, it's got to be expressly stated in the contract. Well, let me ask you a question. What if before the mother died, she had sold the property that was in the trust too? If the mother had sold the property, and the property was no longer in existence at the time of her death. It could still be in existence. But not owned by the family. Then it would be impossible to perform the agreement, and the agreement would have become non-void. What property was covered? There were two parcels, correct? Both parcels were covered. Well, yeah, but one was in fee by Dorothy, and she could do whatever she wanted with it. That's right. And that's one of the reasons for this agreement being signed. It allowed each adult child to control his or her own destiny. Everybody has the risk of dying. Everybody knew Dorothy could change her estate plan. Each adult child bargained for and got the benefit of this agreement that's saying no matter when I die or whether or not I survive my mom, this is the farmland that stays with me or my heirs. So they can defeat the will of the testator, or the settler in this case, by making some agreement that says even if it doesn't matter who mom leaves the property to, we're going to agree that it's going to be divided up this way. That was to sell the agreement of the three adult children, yes, and should be enforced. How about parcel one? Didn't we have one child die without issue? Yes, that was my client. That was Wayne Walter who was left to stay. And what did Wayne have? I mean, it went per stirpes, didn't it, if Wayne pre-deceased Dorothy? Without this agreement, parcel one went per stirpes, which would be one-half to June Watson and one-half to the children of Mark Walter. Well, that agreement just destroys Roy's testamentary intent, doesn't it? His intent was there. As to parcel one, what was his testamentary intent when he put per stirpes? That it would pass to the children who were living at the time of his death, or at the time of his wife's death, is the way he worded it. Okay. He defined it per stirpes at the time of my wife's death if she survives me. And because Wayne did not survive the mom, nothing would have gone to Wayne's estate, which means there would only be two shares. Mark did not survive mom, but this half would go down to his children and the other half would go to June. But the law and public policy are to encourage families to be able to make their own agreement. You know, there's frequently a concern, oh, the two sons who are farming, they live close to mom. They may end up getting this estate plan changed and they may end up getting the lion's share of the estate. So these children on their own entered into this agreement and they anticipated and addressed the issue of death. Now, they stated in paragraph 7 that in the event one or more of the parties fails to survive Dorothy, then the holder of the interest of the deceased party collectively shall stand in such deceased party's stead and shall be bound by the terms of disagreement. And then they went even further in paragraph 8 that in the event all of the parties fail to survive Dorothy Walter, this agreement shall become null and void. So the agreement stated when it would become null and void, only if all three children did not survive the mom, Dorothy, but one child did. So you're saying that Wayne, Wayne's the one that died without issue. Correct. So that Wayne's share which descended to June and to the children of Mar? Mark. Mark. That's the partial one that came from the dad's estate. Yeah, so they need to kick that in to Marissa. Correct. Is what you're saying. Yes. I'm just getting the mechanics. Yes, because the three children entered into agreement on how are we going to own all of this land when mom's gone? How are we going to cut up the pie? Who's going to own what? Now, they didn't have to enter into this agreement. Nobody forced them into it. And if this was really a like kind of exchange, they would have waited until after mom died. And then after mom died, if they were all living, they'd say, I'll convey my one-third interest to you in this farm if you give me your one-third interest in that farm. But the children didn't want to do that. The children wanted to guarantee what will my position be no matter when I die or no matter when mom dies. And there was a very specific step-by-step procedure on how to get the plan implemented. It said that following the death of Dorothy Walter as the partial one, the party shall. It does not say that. The party shall what? The party shall convey all interest in the eastern one-third of partial one to Mark, convey all interest in the middle one-third to Wayne, and convey all interest in western one-third of partial one to June. But if Mark doesn't have anything to convey, what's that say about performance? What could Mark convey? Well, they would all collectively sign 1D, all their successors in interest, and that was addressed in the very last paragraph, 9, that this agreement shall be binding upon and in the name of the benefit of the heirs, executors, administrators, successors, and the signs of the partial. It is true that without this agreement, Wayne gets nothing because he didn't survive mom. Wayne would get nothing, which means nothing would go to his beneficiary, Marissa. But that does not void this agreement. You have to construe the agreement as it's written, not as maybe somebody wants it to be based on a change of circumstances after the agreement was signed. Everybody took that risk when they signed it. Well, except, let me rephrase my question then. What does Mark or his, or excuse me, Wayne or his estate, what do they have to convey to anybody when it comes time to divide that property out? Without the agreement, they have nothing. But the end of the agreement that Wayne said, no matter what I get, if I get all the partial too from mom, I'm still obligated to convey over to my brother and sister. But the question is on Wayne. Wayne's pre-deceased, assumedly there was an estate open and closed. His will was probated, presumably, and he gave whatever estate he had, presumably, to Marissa, a non-family member. Correct. So upon the death of Dorothy, Wayne can't convey anything because he doesn't have anything, nor does his estate. But he has rights under this agreement. The rights surviving his death, which would empower Marissa to receive under that agreement. Wayne gave his entire estate to Marissa. Correct. And so all rights that Wayne had under this agreement went to Marissa. Okay. And though she would have no fee interest because it didn't pass that way, either through the trust of Dorothy or the Posterpi's provision of Roy, she just stands in the position of a beneficiary, is that right? Beneficiary of Wayne's estate, yes. Well, but I mean a beneficiary of conveyances by June, arguably, who is a party to the agreement, and the children of Mark, who are to convey a third, and June is to convey a third, right? Yes. To Marissa. Yes. Okay. There was this uncertainty. When the agreement was signed, yes, each had an expectancy. What this agreement did was it eliminated all uncertainty. It eliminated all risk. Well, it didn't eliminate all risk at all. If June got rid of the property before she died, there would be nothing. It didn't eliminate that. In other words, if June sold the property before she died. You mean Dorothy? Dorothy. I better understand that. I apologize. The mother, if she, before her death, had she sold off the one parcel that she had, it didn't eliminate that? No. That issue was not addressed. But if that had happened, it would be impossible to perform, and then the agreement would not be valid. But that did not happen. And the reason it would be valid would be because none of the parties to that contract would have had an interest in that parcel that they could convey between themselves. Yes. Counsel has two minutes. I've covered my argument. If there's any other questions. You're thinking. I'm thinking. Okay. All right. Thank you, Mr. Black. Thank you. Mr. Hyatt. Thank you. Good afternoon. Now, the Circuit Court found that the 1993 agreement was both unenforceable and annulling. This was absolutely correct. Because at its core, this case shows that you can't give away property that you don't have. There are three independent bases by which this court can affirm the lower court's order. First, reject what amounts to a plain meaning argument made by the plaintiffs as irrelevant to whether or not this agreement can actually ever be enforced. In fact, it's a distraction. Wayne Walter and Mark Walter never possessed vested property interests in the first place. Second, under contract law, the agreement is unenforceable due to a failure of condition perceived. And finally, also pursuant to contract law, the agreement is unenforceable due to the failure of consideration. Firstly, with respect to the plain meaning argument, that doctrine, which is a little more present in the briefs than it was in argument here, just simply doesn't apply. It can't overpower the fact that certain expectancies held by Wayne and by Mark never vested as was anticipated in the agreement. These were mere expectancies that never turned into anything beyond unfulfilled wishes. The plaintiffs are basically asking the court to view certain portions of the agreement in a vacuum and to ignore reality. The agreement was predicated on the assumption that Dorothy Walters' children would survive. If they did, each would take one third shares of the section 15 parcel left by my dad, of course, the Residualary Trust, and the section 22 parcel, which was the Dorothy Walter Trust. So long as this happened, they could be free to rearrange their respective shares all they wanted. And really the core purpose of the agreement, if you read it, is just the rearrangement of those shares. Can I ask you this question? Certainly. Assuming all three children survived Dorothy and Dorothy set up that care trust, okay, on parcel two, which she held in fee, correct? Yes. What if she changed the provisions of that trust, as she did? She did. Subsequently, and said, no, on my debt, I want the entire fee to go to June. Then is that agreement operative at that point because the three children survived? I don't believe it is. I'm sorry. You got me doing it. I apologize. Dorothy retained through her lifetime the power to amend her trust. Correct. And as we know, she did it multiple times. I'll discuss in a moment the final two amendments, which she made after the death of her two boys. So she had the power at any time to change the terms of the Dorothy Walter Trust. If she changed it in such a way that the contract would have no effect, then that's exactly what would have happened. Well, I don't know that contract. If it went 100% of the fee to June, is June bound by that contract? I mean, June is a surviving child, agreed with the other two surviving children that I'm going to divvy up parcel two into thirds, and you each get a respective third. Well, if I can skip ahead a little bit to my favor of condition proceeding argument, then. The agreement itself, right on the first page, says that each of the siblings have the expectation that they would each receive a share of the section 22 parcel from the Dorothy Walter Trust. Obviously, this didn't happen because Dorothy amended it, and we also have the death of Wayne. That expectation was a condition proceeding, an event that must take place prior to the contract becoming effective. And if that's not satisfied, we know that the contract is invalid and obligations of the parties must come to an end. Now, in our brief, we cite a case I cannot pronounce, the court, it's a Fifth District 1995 case. The plaintiffs in that matter were property sellers that entered into a written contract with a purchaser. The contract contained certain express conditions, including one stating that a different parcel of property must be conveyed from the municipality involved, the city of Edwardsville, to the seller before the closing date. Now, the conveyance of that land was identified by the court to be an unambiguous condition proceeding. And because it didn't happen, everything else under the contract was considered void and the defendant's obligations under it were discharged. That's the situation here. And I believe that the 1993 agreement, just by its very terms, states the assumption, the condition proceeding, that each of the three were to get a share of the Section 22 property. Now, taking a look lower on the agreement, reading it through, you can see, as I mentioned before, that its real purpose is to rearrange the shares of land, both with the Section 22 property and the Section 15 property. That's impossible if only June, as Justice Holdridge mentioned, it takes. Maybe even more fundamentally, the plain language of the agreement, looking at that again, called for Wayne, for example, to convey all his interest in the eastern one-third and middle one-third of Section 15 to Mark and the western one-third to June. As we know, this is impossible. He never took. As to the Section 22 parcel pursuant to the Dorothy Walter Trust, at the time of their deaths, Wayne's and Mark's interests had not yet vested. As we've already mentioned, Dorothy retained the right to amend. She did on two occasions. In June of 2008, she eliminated Wayne as a beneficiary after his death. In October of that year, she changed how she provided for her granddaughters. Instead of Wayne's daughters getting land, they were to get cash payments. Those two amendments eliminated Wayne's interests and Mark's interests. Mark has the dollars. He does, that's right. You said Wayne. I'm sorry. Wayne's interests and Mark's interests both go to Section 22. The land swaps, then, are no longer possible. Comment A to Section 41 of the Restatement of Third of Trusts states, by all traditional and current concepts of property, expectancies are not property interests. Cases dating from the late 1800s from the Illinois Supreme Court tell us that no right to property exists unless an expectancy actually vests. The Kaiser v. Covey case that we cite, also old, but we believe is very much on point, is an Illinois Supreme Court decision from 1948. In that case, a testatrix executed a contract with two heirs, Alice and Elizabeth, in which she agreed to prepare a will, bequeathing her property in exchange for the heirs' promise to, upon their deaths, leave that same property to the testatrix's brother, William. Alice, Elizabeth, and William unexpectedly all pre-deceased the testatrix. So she decided, very reasonably, to go ahead and amend her will and convey her property to someone else. Predictably, because it's a lawsuit, William's, Alice's, and Elizabeth's heirs were assigned all sued for specific performance, and the Supreme Court found that the contract was unenforceable by those without a vested interest. William was one of those people. His interest lapsed when, after his death, the testatrix amended her will. He never once had a vested interest that he could pass on. The formation of a contract, according to the Kaiser court, intended to convey an expectancy, doesn't, by itself, convert that expectancy into a vested right. No vested rights were created by the contract in that case, and the deaths of Alice, Elizabeth, and William before the testatrix rendered it a nullity. Here, none of the plaintiffs possesses a vested interest in the Section 22 parcel from the Dorothy Walter Trust. And Marissa doesn't possess a vested interest in the Section 15 parcel, either. Judge Holland recognized this and commented on it. He said, the failure of all the expectancies to vest as anticipated, and the impossibility of two parties to convey or exchange the interest in the parcels as contemplated by the 1993 agreement, renders the 1993 agreement a nullity. Kaiser also spoke to the failure of condition proceeding, which I already mentioned. The Supreme Court there also reviewed the preamble of the contract. And I bring this up because the plaintiffs make quite a bit in their brief about where the condition proceeding is located within the contract. They say, well, it's in the recitals. Ignore it. It doesn't mean anything. In Kaiser, the court held that the preamble to the contract established that the testatrix, what her intent was, was to look after her brother William. Once William predeceased her, the sole purpose of the agreement was gone. And the agreement was at an end. In other words, his survival was a condition proceeding to the contract. Significantly here, the trial judge found that the recitals formed an operative portion of the agreement. So it's even stronger here. He pointed out that the legal descriptions of the two properties involved are actually in the whereas clauses of the contract. And without them, without legal descriptions, what do you have? So that language must have operative meaning. So, too, must the unambiguous condition proceeding found in that same language. The court found that the condition proceeding, the failure of it, rendered by the contract a nullity. But there's also a failure of consideration here, too, under basic contract law. There was consideration originally. You can contract for expectancies. The problem here is that that consideration subsequently failed. Failure of consideration happens when, due to a supervening cause, after an agreement has been reached, the promised performance somehow fails to materialize. Once again, going back to Kaiser, the plaintiffs in that case argued that there was adequate consideration to support, to enforce specific performance of the contract in the releases of certain expectancies. The court said no. The contract amounted to an agreement whereby Alice and Elizabeth promised to devise to William whatever they had left of the testatrix's property they had at the time of their deaths if the testatrix made her will in accordance with the contract. This was, according to the court, inadequate consideration. Here, we don't have any consideration at all. And the plaintiff's reliance on Stepanovich's leave, therefore, is unavailable. That's also an inadequate consideration case. Here, Wayne and Mark are left with no consideration, which means they're left with nothing to trade. Wayne's share of the Section 15 parcel, as we know, lapsed upon his death. His anticipated share of the Section 22 parcel never materialized after Dorothy amended her trust. And Mark's share of the Section 22 parcel was eliminated by another amendment. The plaintiff's hears have simply nothing to give. Enforcing the agreement today would force June to unilaterally perform, to basically gift to Mark's descendants and to Wayne's girlfriend, property Mark and Wayne themselves are not entitled to, pursuant to the terms created by their father and their mother. The agreement simply anticipated a reality that never came to pass, and it is a failure, and it can't be enforced. I ask you to affirm the lower court's ruling on summary judgment, and I'm happy to entertain any additional questions. Thank you, Mr. Knapp. Mr. Black, somewhere above. There is consideration. When you make a settlement agreement, Wayne agreed he'd get the western two-thirds of parcel two, Mark agreed he'd get the eastern two-thirds of parcel one, and they both agreed they wouldn't have any other rights to the remaining land, which was going to June. But they also agreed that he would transfer his interest in the other parcels. Whatever interest he might inherit, yes. Right, because they were presuming undivided interest, right? They were expecting undivided interest. Well, there was in Dad's parcel, but in Mom's parcel, she had broken it up to eastern third, middle third, and western third. And so the agreement called for him to convey his interest in the other thirds, the other two-thirds, right? Yes. And he couldn't do that because he didn't have any interest to convey, right? At the time they made the agreement, they all had an expectancy, and they were releasing all future rights to all land that they weren't going to get. So they did give up something. Wayne gave up the right to make a claim to the other lands. He said, all I want is the western two-thirds of parcel two. My question is, after the mother died, the contract called for him, the agreement of the 1990s called for him to convey his interest in the other two-thirds to his siblings, right? Well, the agreement doesn't quite lead that way. It starts out, the party shall. The party shall. You see, they're all signing one document to transfer this interest to June, that interest to Mark. So by all three parties signing the one document, whether you're on three-thirds or one-third or two-thirds, it's a settlement. So you're getting all the interest into that one. So it didn't say Wayne had to convey an undivided one-third. It didn't say Mark had to convey an undivided one-third. It says the party shall convey interest western third, middle third, east. And the consideration was at the time of the settlement agreement, not at the time of Dorothy's death. Well, but at the time, after Dorothy's death, two of the parties had nothing to convey, right? Correct. But the relevant time to determine the consideration is when the agreement was made. That's when you have to do it. And what case says that? I don't have it at my desk, but we quoted that in our brief. You view consideration at the time that the agreement is made. You keep referring to this as a settlement. What were they settling? Wasn't the issue one didn't want to live by the other or own property by the other? There was some dissension between the two sons. But what they were settling, who was going to own what. Right. And so when only one survived, there was no disagreement. But that very issue was anticipated on the last page. It said only if all parties do not survive Dorothy, then it's null and void. If all had died before Dorothy, it's null and void. But one did survive. That means it has to be effective. So they anticipated the issue of death. And each of the adult kids was guaranteeing, I'm going to own something no matter what might happen down the road, no matter when I die or when Mom dies or if Mom changes her estate plan. We're all locked in. Each of us is going to get one-third of all the land. And if you enforce the agreement like that, everybody will get exactly what they bargained for, nothing more and nothing less. Counsel, that's one minute. Nothing further. Okay, thank you, Mr. Black. Thank you. In your argument, though, the other provision in the agreement said it's not that they're going to get the land, but that in addition, if they did not survive, their heirs would receive legacies. Yes, that's in paragraph 9 of the agreement. Thank you. Okay, thank you, Mr. Black. Mr. Heil, thank you, too. This matter will be taken under advisement. A written disposition will be issued. And right now we're in brief recess for mental pain coordination.